UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL RAY MILLS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>KEN CLARKE, et al.,<br><br>　　　　Defendants. | Case No.  1:20-cv-00498-HBK (PC)<br><br>ORDER TO ASSIGN A DISTRICT JUDGE<br><br>FINDINGS AND RECOMMENDATIONS TO PERMIT PLAINTIFF TO PROCEED ON COGNIZABLE CLAIMS AND DISMISS REMAINING CLAIMS AND DEFENDANTS[1]<br><br>FOURTEEN-DAY OBJECTION PERIOD<br><br>(Doc. No.  27) |

　　　　Plaintiff Darryl Ray Mills is a state prisoner proceeding pro se and *in forma pauperis* in this civil rights complaint under 42 U.S.C. § 1983. Plaintiff proceeds on his First Amended Complaint. (Doc. No. 21, "FAC"). As more fully set forth below, the undersigned finds the FAC states a cognizable Eighth Amendment excessive force claim against Defendants J. Navaro, I. Medina, O. Rodriguez, and A. Nunez, and two Eighth Amendment deliberate medical indifference claims against Defendant C. Lewis and recommends that Plaintiff be allowed to proceed only on these claims. As to Plaintiff's remaining claims, the undersigned finds the FAC may state a claim as to certain causes of action, but they are improperly joined under Rules 18 and 20, while others fail to state a claim. Therefore, the undersigned recommends the remaining

---

[1] The undersigned submits these factual findings and recommendations to the District Court pursuant to 28 U.S.C. §636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2022).

claims and defendants be dismissed without prejudice.

## BACKGROUND AND SUMMARY OF OPERATIVE PLEADING

### A. Procedural History

The former assigned magistrate judge found Plaintiff's initial complaint did not state a claim but permitted Plaintiff to file an amended complaint. (Doc. No. 8). Plaintiff filed a first amended complaint (Doc. No. 21, "FAC") and the undersigned found the FAC stated a cognizable Eighth Amendment excessive force claim against Defendants J. Navaro, I. Medina, O. Rodriguez, and A. Nunez, and an Eighth Amendment deliberate medical indifference claim against Defendant C. Lewis, but no other claims. (Doc. No. 26). The Court directed Plaintiff to file a notice to voluntarily dismiss the Defendants and other claims deemed not cognizable or stand on his FAC subject to the undersigned issuing a findings and recommendation to dismiss the Defendants and other claims considered not cognizable. (*Id*. at 6). Plaintiff filed a notice that he "stands on 'all' claims in complaint(s) as well including the courts deemed cognizable claims not dismissing any claims nor defendants period . . . ." (Doc. No. 27 at 1). The undersigned construes this as a notice that Plaintiff intends to stand on his FAC subject to the undersigned recommending dismissal of those claims and defendants deemed not cognizable.

### B. Summary of Operative Pleading

Plaintiff's initial complaint contained numerous allegations against 54 defendants. (*See generally* Doc. No. 1). Plaintiff's FAC focuses on a narrower set of claims and defendants than his initial complaint, but still names 23 defendants and pertains to seven separate incidents over a nine-month period.[2] (*See generally* Doc. No. 21). The claims in the FAC are not presented in chronological order, and related claims are found within different sections of the FAC. In the interest of clarity, therefore, the Court examines the claims chronologically, while noting the number of the corresponding claim(s) in parentheses.[3] Plaintiff alleges the following facts in

---

[2] Plaintiff improperly tries to incorporate the original complaint. *See* Doc. No. 21 at 3 (stating "See attached Amended Civil Rights Complaint and 1st Complaint"). The Court advised Plaintiff in its first screening order, per Local Rule 220, "the amended complaint must be complete on its face without reference to the prior pleading . . . [o]nce an amended complaint is filed, the original complaint no longer serves any function." (Doc. No. 8 at 3-4).

[3] The Court refers to the claim numbers ascribed by Plaintiff to the incidents and uses the pages numbers

support of his various claims:

On May 14, 2019 (Claim 1), "after refusing to go outside for what was called 'a movie-cleanup [,]'" Plaintiff was placed in handcuffs by Sergeant J. Navaro so tightly "that it stopped circulation from flowing." (*Id*. at 3.) He states that other "involved correctional officers" were I. Medina, O. Rodriguez, A. Nunez, and "other officers . . . which Plaintiff only know [sic] by last name." (*Id*.) These officers all escorted Plaintiff to a cage where he was made to wait for 45 minutes to 1 hour. (*Id*.). He told Defendants that the handcuffs were too tight, but "they refused to loosing [sic] or take handcuffs off as Plaintiff was already secured in the cage." (*Id*. at 3-4). Plaintiff states that as a result, he suffered "permanent damage to [his] right hand . . . ." (*Id*. at 4).

On the same day (Claim 4), "Psych Technician" Carrie Lewis "delayed and denied care" after Plaintiff complained of injury from the overly tight handcuffs and did not provide medical care until the next day. (*Id*. at 5D). She "had taken a look at [Plaintiff's injuries] but failed to provide medical attention and get hand cuff's [sic] removed." (*Id*. at 5D). Defendant Lewis "also fabricated a false report to cover-up her violating Plaintiff's civil rights." (*Id*.).

On August 31, 2019 (Claim 2), Plaintiff was again placed in handcuffs and escorted to the showers by Correctional Officers J. Higuera and N. Limon. (*Id*. at 4). When he reached the bottom of the stairs, Plaintiff "was tripped while being slammed to the ground and immidiately [sic] assaulted by" Correctional Officers N. Vera, N. Limon, and J. Higuera. (*Id*.). Plaintiff states that Correctional Officer S. Limon was working the control tower and failed to stop the assault. (*Id*.). Responding Officer R. Ayala (who is not named as a defendant) "denied as well as delayed Plaintiff immediate medical attention." (*Id*.). Plaintiff states Psych technician C. Lewis again "refused to get attention that was needed" to Plaintiff's injuries, which included a "black eye . . . bruising around face & head, slice on right arm, cuts & bruising on both ankles . . . . . (*Id*. at 5). Registered Nurse J. Jecrois (who is also not a named defendant) "failed to also get Plaintiff immidiate [sic] medical attention." (*Id*.). Plaintiff was transported to an outside hospital the next day. He states that "all mentioned defendants fabricated reports to conceal . . . their violating

---

on the FAC as opposed to the page numbers that appear on the Court's CM/ECF system.

Plaintiff's civil rights." (*Id.*).

On September 2, 2019 (Claim 5), Correctional Sergeant J. Barnes, who was responsible for interviewing Plaintiff regarding the alleged August 31, 2019 assault, approached Plaintiff's cell while he was using the restroom and began calling Plaintiff "a bitch." (*Id.* at 5E). Sergeant J. Navaro joined in the taunting. (*Id.*) Plaintiff was then taken to a small office to be interviewed. Sergeant J. Barnes continued taunting Plaintiff, calling him a "bitch", and trying to provoke Plaintiff to violence. (*Id.*).

On October 27, 2019 (Claim 6), Correctional Lieutenant M. Maine found Plaintiff guilty of battery on a peace officer. (*Id.* at 5G). Plaintiff states this was a false charge used to cover up for an unspecified earlier assault by correctional officers. (*Id.*). He states his due process rights were violated because he was denied the opportunity to have witnesses present at his grievance hearing. (*Id.*).

On December 10, 2019 (Claim 6), Lieutenant A. Randolph conspired to find Plaintiff guilty of a rule violation relating to his receipt of a package from his mother, which was "donated" without Plaintiff's consent. (*Id.*). Plaintiff states that "false charges" were brought against him to cover up the wrongful seizure of his property. (*Id.*).

On January 2, 2020 (Claim 3), Correctional Officer E. Cerda-Tirano escorted Plaintiff while in handcuffs to the shower. (*Id.* at 5B). He ordered Plaintiff to face the wall and began yelling at him. (*Id.*). Plaintiff was "slammed then jumped on by both Correctional Officer E. Cerda-Tirano & Correctional Officer E. Cruiel both punching Plaintiff . . . in the face, eye, nose, head." (*Id.*). Plaintiff states he was pinned down by Defendants and a spit mask was placed over his face while Correctional Officer N. Limon punched him in the face causing blood to splatter inside the mask. (*Id.*). Plaintiff states Correctional Officer H. Flores was working the control tower, where he witnessed the assault and failed to intervene. (*Id.* at 5C).

In the same incident, various other prison officials failed to prevent harm to Plaintiff. Sgt. Markin "failed to assist this Plaintiff" in seeking redress for the alleged assault and instead "taunted" Plaintiff after he reported the incident to Markin and responding officers. (*Id.* at 5B). Lieutenant K. Cruz failed to intervene when other correctional officers taunted Plaintiff by

pulling the spit mask back and forth over his head while he was being evaluated by medical staff. (*Id*. at 5C). "Sgt. Bararona [sic]" the supervising sergeant at the time of the assault, "both failed to supervise and intervene." (*Id*. at 5C). Investigative Service Unit Officer C. Musselman "failed to investigate Plaintiff's complaints as well [sic] notify Ken Clarke (Warden) of my request of wanting to file charges." (*Id*.). Finally, all Defendants "fabricated reports" to conceal the assault on Plaintiff. (*Id*.).

On February 4, 2020 (Claim 5), Correctional Officers O. Valladolid and R. Gamboa assaulted Plaintiff in the shower "for filing complaints, grievances, & doing interviews on what has been taking place." (*Id*.). Plaintiff states that Defendant Gamboa "lifted [him] in the air [and] dropp'd [sic] [him] while O. Valladolid pressed down on Plaintiff's face" and screamed threats at him. (*Id*. at 5E-5F). Defendants R. Gamboa and G. Torres stood and watched. (*Id*. at 5F). Plaintiff was medically evaluated and then taken back to his cell in handcuffs and leg restraints by Sergeant K. Green and CO's N. Limon, O. Valladolid, R. Gamboa, and G. Torres. (*Id*.). "Plaintiff was then kicked in the back by Correctional Officer O. Valladolid which caused Plaintiff to fall face first inside cell." (*Id*.). Plaintiff "could not breath [sic] due to pain and being kicked in the back" and he was denied a medical evaluation. (*Id*.).

**Relief Requested**

As relief, Plaintiff seeks "money damages . . . of physical; emotional; and psychological injunctive relief[;]" criminal charges filed against Defendants; access to all evidence involved in Plaintiff's FAC, including videos and photos; appointment of counsel; release from segregation; "for plaintiff's U.S. constitutional rights to be implemented [,]" and "any and all relief the Court deems necessary." (*Id*. at 3).

## ANALYSIS AND APPLICABLE LAW

As set forth more fully below, the undersigned finds that Plaintiff's FAC states a cognizable claim as to certain incidents and defendants, may state a claim as to others that cannot proceed in this action because they are improperly joined under Rules 18 and 20, and fails to state a claim as to other claims and Defendants.

////

**A.  Federal Rules of Civil Procedure 8, 18, and 20**

Pursuant to Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  While factual allegations are accepted as true, legal conclusions are not. *Id.;* see also *Twombly*, 550 U.S. at 556–557; *Moss*, 572 F.3d at 969.

A plaintiff may not bring unrelated claims against unrelated parties in a single action. Fed. R. Civ. P. 18(a), 20(a)(2); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).  A plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact.  Fed. R. Civ. P. 20(a)(2); *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997).  The "same transaction" requirement refers to similarity in the factual background of a claim. *Coughlin, 130 F.3d* at 1349.  Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.  The fact that some of Plaintiff's allegations are based on the same type of constitutional violation (i.e., excessive force by different actors on different dates, under different factual events) does not necessarily make the claims related for purposes of Rule 18(a).  Claims are related where they are based on the same precipitating event, or a series of related events caused by the same precipitating event.

**B.  May 14, 2019 Incidents**

**1.  Excessive Force (Claim 1)**

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  The inquiry as to whether a prison official's use of force constitutes

6

cruel and unusual punishment is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992); *Whitley v. Albers*, 475 U.S. 312, 320 (1986).

"The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." *Hudson*, 503 U.S. at 8 (internal quotation marks and citations omitted). A prison official's use of force when done maliciously and sadistically to cause harm violates the contemporary standards of decency. *Wilkins v. Gaddy*, 559 U.S. 34, 37, (2010). However, "[n]ot 'every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins*, 559 U.S. at 37 (quoting *Hudson,* 503 U.S. at 9). Factors that can be considered are "the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted." *Whitley*, 475 U.S. at 321; *Marquez v. Gutierrez,* 322 F.3d 689, 692 (9th Cir. 2003).

Whether tight handcuffs can constitute excessive force is fact-specific, however the Ninth Circuit has "found a triable issue when the handcuffs caused demonstrable injury or unnecessary pain, or when officers ignored or refused requests to loosen the handcuffs once alerted that the handcuffs were too tight." *James v. Lee*, 485 F. Supp. 3d 1241, 1255 (S.D. Cal. 2020) (citing *Stevenson v. Jones*, 254 F. Supp. 3d 1080, 1091–92 (N.D. Cal. 2017) (collecting cases); *Smith v. Sergent*, 2017 WL 4284659, at *5–6 (E.D. Cal. Sept. 27, 2017) (collecting cases); *see Hansen v. Black*, 885 F.2d 642, 645 (9th Cir. 1989) (Court found excessive force where officers refused to loosen tight handcuffs, which caused Plaintiff to seek medical attention "for bruises on her wrist and under her upper arm, and she complained of pain in her little finger and upper arm."); *see also Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir. 1993) (finding excessive force when officer refused to loosen tight handcuffs, which resulted in pain and bruises to Plaintiff's wrists that lasted several weeks.)

The undersigned finds that Plaintiff states a cognizable excessive force claim against Defendants J. Navaro, I. Medina, O. Rodriguez, and A. Nunez. Liberally construing the FAC, Plaintiff alleges that Defendant Navaro placed handcuffs on him so tightly as to cause pain and lasting injury, and that all Defendants refused to loosen them after being advised that Plaintiff

7

1  was in pain and he exhibited physical symptoms that the handcuffs were too tight, including
2  discoloration of his skin.  (Doc. No. 21 at 3-4).  While Plaintiff does not specify the nature of his
3  "permanent injury" he alleges that he lost circulation in his wrists for 45 minutes to 1 hour and
4  suffered pain and discoloration in his right hand/arm from the tight handcuffs.  (Doc. No. 21 at 3-
5  4).  This is sufficient to survive the "low threshold" for *sua sponte* screening pursuant to 28
6  U.S.C. Sections 1915(e)(2) and 1915A(b).  *See Wilhelm v. Rotman*, 680 F.3d 1113, 1123 (9th Cir.
7  2012).

8      As to those officers Plaintiff does not know, the undersigned finds that the FAC fails to
9  state a claim.  (Doc. No. 21 at 3).  While "situations may arise where the identity of alleged
10 defendants cannot be known prior to the filing of a complaint," *Gillespie v. Civiletti*, 629 F.2d
11 637, 642 (9th Cir. 1980), Plaintiff must plead sufficient factual detail to allow the court to
12 reasonably infer that each Defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 678.
13 Plaintiff here fails to do so.  Plaintiff provides no information from which one could later discern
14 the identity of the three unnamed individuals.  Where "it is clear that discovery would not
15 uncover the identities, or that the complaint would be dismissed on other grounds," Plaintiff
16 should not be permitted to proceed with a suit against Doe defendants.  *Gillespie*, 629 F.2d at 642.
17 Thus, the Court finds Plaintiff states a cognizable Eighth Amendment Claim only as to J. Navaro,
18 I. Medina, O. Rodriguez, and A. Nunez in Claim 1.

19              **2.   Deliberate Medical Indifference (Claim 4)**

20     Deliberate indifference to the serious medical needs of an incarcerated person constitutes
21 cruel and unusual punishment in violation of the Eighth Amendment.  *See Estelle v. Gamble,* 429
22 U.S. 97, 104 (1976).  A finding of "deliberate indifference" involves an examination of the
23 seriousness of the plaintiff's medical need (determined objectively) and the nature of the
24 defendant's response (determined by defendant's subjective state of mind).  *See McGuckin v.*
25 *Smith,* 974 F.2d 1050, 1059 (9th Cir.1992), *overruled on other grounds, WMX Technologies, Inc.*
26 *v. Miller,* 104 F.3d 1133, 1136 (9th Cir.1997) (en banc).  On the objective prong, a "serious"
27 medical need exists if the failure to treat "could result in further significant injury" or the
28 "unnecessary and wanton infliction of pain."  *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir.

2014); *see also Doty v. County of Lassen*, 37 F.3d 540, 546 n.3 (9th Cir. 1994). On the subjective prong, a prison official must know of and disregard a serious risk of harm. *Farmer,* 511 U.S. at 837. Such indifference may appear when a prison official intentionally denies or delays care, or intentionally interferes with treatment once prescribed. *Estelle,* 429 U.S. at 104-05.

A delay in treatment, without more, is likewise insufficient to state a claim. *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). A plaintiff must also demonstrate harm from the official's conduct. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). And the defendant's actions must have been both an actual and proximate cause of this harm. *Lemire*, 726 F.3d at 1074.

Liberally construing the FAC, as this stage of the proceedings, Plaintiff states a cognizable claim of deliberate medical indifference as to the May 14, 2019 incident. He states Defendant Lewis saw him when he was suffering from pain, numbness, and discoloration, and despite the examination, Lewis "failed to provide medical attention and get handcuff's [sic] removed" and did not provide Plaintiff with any medical care until the next day. (Doc. No. 21 at 5D). As a result, Plaintiff suffered pain for 45 minutes to 1 hour and claims to have "permanent damage" to his right hand/arm due to the delay. (*Id.*).

Plaintiff's allegations satisfy both prongs of the Eighth Amendment test, sufficient to meet the low threshold of *sua sponte* screening pursuant to 28 U.S.C. Sections 1915(e)(2) and 1915A(b). *See Wilhelm*, 680 F.3d at 1123. Defendant Lewis's failure to provide any aid to Plaintiff resulted in "unnecessary and wanton infliction of pain [,]" and lasting injury to Plaintiff's right hand and arm, which satisfies the objective prong. *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014). Defendant Lewis's knowledge of the pain and injury being suffered by Plaintiff—she had examined him in the course of the incident—and deliberate decision not to treat him satisfies the subjective prong. *See Estelle,* 429 U.S. at 104-05.

////

////

////

////

9

**C. August 31 –September 2, 2019 Incidents**

    **1. Excessive Force (Claim 2)**

Plaintiff states, on August 31, 2019, he was escorted to the shower and "tripped while being slammed to the ground and immidiately [sic] assaulted by (3) of the correctional officers N. Vera, N. Limon, and J. Higuera, which were both malicious & sadistic." (Doc. No. 21 at 4).

Plaintiff's allegation that these three Correctional Officers "assaulted" him, without further detail, is too vague, conclusory, and "devoid of . . . 'factual enhancement' "to permit the Court "to draw the reasonable inference" that these Defendants engaged in the alleged assault. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Nor is the Court required to accept as true legal conclusions, such as Plaintiff's claim that Defendants were "malicious & sadistic." *Id.;* see also *Twombly*, 550 U.S. at 556–557; *Moss*, 572 F.3d at 969. Accordingly, Plaintiff fails to state a cognizable excessive force claim as to this incident.

This claim is also misjoined because it occurred more than three months after the incident described in Claim 1 and involves an entirely different set of defendants than those implicated in Claim 1. Besides the fact that both incidents took place in prison and involve the same constitutional deprivation, Claim 1 and Claim 2 do not share a similarity of factual background that would warrant joining them in a single action, therefore Claim 2 is improperly joined under Rules 18 and 20. *Coughlin, 130 F.3d* at 1349; *see also Mosier v. Cal. Dep't of Corr. & Rehab.*, 2012 WL 2577524, at *2 (E.D. Cal. Jul. 2, 2012) ("The fact that claims are premised on the same type of constitutional violation(s) … against multiple defendants does not make them factually related.").

    **2. Deliberate Medical Indifference (Claim 4)**

Plaintiff asserts a second claim of deliberate medical indifference as to psychiatric technician Carrie Lewis, based on her failure to treat him after the use of force incident on August 31, 2019.[4] The undersigned finds that although, as noted *supra*, the claim arising from the

---

[4] The Court notes the reference to the claim as occurring on "September 31, 2019" to be in error and liberally construes the claim as arising from the use of force incident August 31, 2019 since the facts described in both claims are virtually the same. (Doc. No. 21 at 4-5, 5D). *See Bernhardt v. L.A. County*, 339 F.3d 920, 925 (9th Cir. 2003) (noting that "the court must construe the pleadings liberally and must

10

August 31, 2019 *use of force incident* is misjoined and fails to state a claim, the FAC states a deliberate medical indifference claim as to Defendant Lewis arising out of the same incident because it is pled in significantly greater detail.  And, because Defendant Lewis is named in both Claims 1 and 4 under the same cause of action (deliberate medical indifference), the two are properly joined in the same suit. Fed. R. Civ. P. 18.

Somewhat confusingly, Plaintiff alleges facts pertaining to Defendant Lewis' actions on August 31, 2019 in two different claims (Claim 2 and Claim 4).  The Court therefore incorporates the facts alleged in both Claims 2 and 4 as they relate to this incident.  Defendant Lewis "conducted a 7219 (documentation of injuries)" on Plaintiff after the alleged excessive force incident. (Doc. No. 21 at 4-5).  Despite the fact that Plaintiff had sustained a black eye, which was swollen shut, bruising around his face and head, a slice on his right arm, and cuts and bruising on both ankles, Lewis "refused to get Plaintiff [medical] attention." (*Id.*).  The injuries were sufficiently serious that Plaintiff had to be transported to Bakersfield Adventist Hospital the following day. (*Id.* at 5D).  The FAC states a claim as to deliberate medical indifference because it sufficiently alleges an objectively serious medical need, Defendant Lewis' knowledge of that need, and her refusal to treat him. *McGuckin,* 974 F.2d at 1059.

### 3. False Report (Claim 4)

Plaintiff also states Defendant Lewis "fabricated a false report to cover-up her violating Plaintiff's civil rights." (Doc. No 21 at 5D).  This allegation is vague and conclusory. Although detailed factual allegations are not required to meet the pleading requirements of Rule 8, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678 (citations omitted), and courts "are not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  Furthermore, "[f]alse statements, alone, do not violate a prisoner's constitutional rights," *Alverto v. Henderling*, 2018 WL 7018718, at *1 (W.D. Wash. Oct. 2, 2018), *report and recommendation adopted*, 2019 WL 174674 (W.D. Wash.

---

afford plaintiff the benefit of any doubt") (quoting *Karim–Panahi v. Los Angeles Police Dep't,* 839 F.2d 621, 623 (9th Cir.1988)).

11

Jan. 11, 2019). Further, to the extent Plaintiff claims he was issued a false disciplinary report as a result, the filing of a false disciplinary report by a prison official against a prisoner is not a per se violation of the prisoner's constitutional rights. *See Muhammad v. Rubia*, 2010 WL 1260425, at *3 (N.D. Cal. Mar. 29, 2010) ("[A] prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. As long as a prisoner is afforded procedural due process in the disciplinary hearing, allegations of a fabricated charge fail to state a claim under § 1983") (internal citation omitted)), *aff'd* 453 F. App'x 751 (9th Cir. 2011); *Harper v. Costa*, 2009 WL 1684599, at *2-3 (E.D. Cal. June 16, 2009) ("Although the Ninth Circuit has not directly addressed this issue in a published opinion, district courts throughout California . . . have determined that a prisoner's allegation that prison officials issued a false disciplinary charge against him fails to state a cognizable claim for relief under § 1983"), *aff'd* 393 F. App'x 488 (9th Cir. 2010). Thus, even assuming that the disciplinary report was false, it does not state a standalone constitutional claim. *Canovas v. California Dept. of Corrections*, 2014 WL 5699750, n.2 (E.D. Cal. 2014). Accordingly, the FAC fails to state a claim as to Defendant Lewis's alleged fabrication of a report.

### 4. Retaliation (Claim 5)

Prisoners have a First Amendment right to file a grievance or civil rights complaint against correctional officials. *Brodheim v. Cry*, 584 F. 3d 1262, 1269 (9th Cir. 2009). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). A retaliatory motive may be shown by the timing of the allegedly retaliatory act or other circumstantial evidence, as well as direct evidence. *Bruce v. Ylst,* 351 F.3d 1283, 1288–89 (9th Cir. 2003); *McCollum v. Ca. Dep't of Corr. And Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011). Mere speculation that a defendant acted out of retaliation is not sufficient. *Wood v. Yordy,* 753 F.3d 899, 904 (9th Cir. 2014) (citing cases).

Two days after the August 31, 2019 excessive force incident, Plaintiff was taunted by Correctional Sergeant Barnes and Correctional Officer Navaro who called him a "bitch" and unsuccessfully tried to provoke him to violence. (Doc. No. 21 at 5E). Plaintiff asserts this was done in retaliation for him filing a grievance. (*Id*.). The Court finds that Plaintiff fails to state a claim as to this incident. Verbal harassment is not enough to state an adverse action for purposes of retaliation. *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987). Because Plaintiff's complaint is devoid of facts indicating any adverse action beyond verbal harassment, the FAC fails to state a cognizable claim of retaliation as to the September 2, 2019 incident.

### D. October 27, 2019 and December 10, 2019 Rule Violation Reports (Claim 6)

An inmate alleging he has been subjected to a false rule violation report (RVR) can state a cognizable civil rights claim in two ways: (1) by alleging the false RVR was filed in retaliation for his exercise of a constitutional right, or (2) by alleging he was not afforded procedural due process in the RVR hearing. *Hackworth v. Arevalos*, 2022 WL 18027835, at *10 (E.D. Cal. Dec. 30, 2022) (citations omitted), *report and recommendation adopted*, 2023 WL 2751532 (E.D. Cal. Mar. 31, 2023). However, as noted *supra*, the filing of a false disciplinary report by a prison official against a prisoner is not a per se violation of the prisoner's constitutional rights. *See Muhammad v. Rubia*, 2010 WL 1260425, at *3.

Plaintiff alleges in Claim 6 that on two different dates prison officials found him guilty of rule violation reports ("RVR") to "cover up" constitutional violations against Plaintiff. (Doc. No. 21 at 5G). First, this claim is misjoined. Plaintiff does not allege any facts indicating that the incidents described are part of the same transaction, occurrence, or series of transactions or occurrences as Claim 1. Plaintiff alleges vaguely that the October 27, 2019 RVR was issued to "cover up the assault on this plaintiff by correctional officers mentiond [sic] in this complaint." (Doc. No. 21 at 5G). Plaintiff does not allege any facts to substantiate this conclusion, nor even specify which assault or which correctional officers he refers to. Likewise, Plaintiff fails to allege any facts indicating that the December 10, 2019 RVR has any connection to Claim 1 or the Defendants involved. Therefore, based on misjoinder alone the claim cannot proceed in this action.

In addition to being misjoined, as set forth below, the FAC also fails to state either a cognizable First Amendment retaliation claim or Fourteenth Amendment due process claim based on the false RVRs.

### 1. Retaliation

As set forth above, "[w]ithin the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 567–68.

Plaintiff states that the October 27, 2019 RVR was "planned and conspiritorized [sic] in order to cover up the assault on this plaintiff by correctional officers mentiond [sic] in this complaint." (Doc. No. 21 at 5G). Plaintiff does not specify which assault was being covered up, which correctional officers are involved, or assert any facts indicating coordination between them and M. Maine, the officer who issued the RVR. Nor does Plaintiff allege any connection between any protected First Amendment conduct by Plaintiff and the false RVR. The FAC thus fails to state a First Amendment retaliation claim as to this RVR.

Similarly, Plaintiff alleges the December 10, 2019 RVR was "conspired & planned" to cover up the fact that unspecified correctional officers "donated[,]" without Plaintiff's consent, a package that was sent to him by his mother. (*Id*.). However, there are no facts alleging that this was done in response to Plaintiff's protected First Amendment conduct, and therefore the FAC fails to state a claim for retaliation as to the December 10, 2019 RVR.

### 2. Due Process Violation

Plaintiff also alleges a due process claim on the basis that his "witnesses were denied to be present" at the October 27, 2019 disciplinary hearings, contrary to unspecified "departmental policy." (Doc. No. 21 at 5G). Plaintiff does not state whether he was found guilty of the RVR, nor does not he state the nature of the deprivation he suffered, if indeed he was found guilty after the RVR. Without a showing of injury, Plaintiff cannot state a Due Process claim.

////

**E. January 2, 2020 Excessive Force Incident (Claim 3)**

The Court finds that Plaintiff may state a cognizable Eighth Amendment excessive use of force claim as to the January 2, 2020 incident, however, because it is misjoined it may not proceed in this action. Defendants Cerda-Tirano, Cruiel, and N. Limon allegedly punched Plaintiff in the face, eyes, nose and head without provocation, an attack that Plaintiff describes with sufficient specificity to state a claim. (Doc. No. 21 at 5B); *see Iqbal*, 556 U.S. at 678. However, Plaintiff's complaint violates the rules regarding joinder of claims. "Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); see also Fed. R. Civ. P. 20(a)(2) (joinder of defendants not permitted unless both commonality and same transaction requirements are satisfied). The January 2, 2020 incident occurred eight months after the excessive force incident in Claim 1, involves an entirely different set of defendants, and bears no apparent causal connection to that prior incident.

In the Court's prior screening order, Plaintiff was cautioned not to include improperly joined claims in any amended complaint. (Doc. No. 8 at 2). The Court previously gave Plaintiff the option either to voluntarily dismiss the claim or stand on the complaint subject to the undersigned recommending dismissal of Claim 3. (Doc. No. 26 at 15). Because Plaintiff has declined to voluntarily dismiss the misjoined claim (Doc. No. 27 at 1), the undersigned now recommends it be dismissed without prejudice.

**F. February 4, 2020 Incident (Claim 5)**

Although Plaintiff styles it only as a retaliation claim, the Court liberally construes Plaintiff's allegations regarding the February 4, 2020 incident as both an excessive force claim and a retaliation claim and finds that those allegations may state a claim, but because they are misjoined they may not proceed in this action. Plaintiff asserts that Defendant R. Gamboa picked him up and dropped him while Plaintiff was in handcuffs, causing Plaintiff to later seek medical

evaluation, although Plaintiff does not specify any injuries that he suffered, nor whether Plaintiff was dropped on his feet or on some other part of his body. (Doc. No. 21 at 5E-5F). Defendant O. Valladolid screamed at Plaintiff in the shower and then later, when being escorted back to his cell, kicked Plaintiff in the back, causing him to land on his face in his cell after which Plaintiff "could not breath [sic] due to pain and being kicked in the back." (Doc. No. 21 at 5E-5F).

The Court need not accept Plaintiff's conclusion that he was "retaliated against . . . for filing complaints; grievances & doing interviews on what has been taking place." (*Id*. at 5E); *see Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). However, the fact that Defendant Valladolid screamed in Plaintiff's face "your [sic] a snitch" (*Id*. at 5F) and that the incident took place after Plaintiff filed multiple grievances against prison officials represents both direct and circumstantial evidence of retaliatory motive. From the facts pled, there is no indication that Defendant Valladolid kicking Plaintiff in the back "advanced a legitimate correctional goal" or was necessary to control a dangerous inmate; rather it appears to have been done maliciously and sadistically to cause harm. *Rhodes*, 408 F.3d at 567–68; *Hudson v. McMillian*, 503 U.S. at 6–7. Accordingly, Plaintiff may state a claim both for excessive use of force and retaliation as to Defendant Valladolid.

However, Plaintiff's FAC, once again, violates the rules regarding joinder of claims. The February 4, 2020 incident does not arise out of the same transaction, occurrence, or series of transactions or occurrences as the May 14, 2019 incident, which involves a completely different set of defendants. "Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees." *George*, 507 F.3d at 607; see also Fed. R. Civ. P. 20(a)(2). Plaintiff was cautioned not to include in his amended complaint improperly joined claims. (Doc. No. 8 at 2). The undersigned previously afforded Plaintiff the option either to voluntarily dismiss Claim 5 or stand on the complaint subject to the undersigned recommending dismissal. (Doc. No. 26 at 15).

16

Plaintiff declined to voluntarily dismiss the claim. (Doc. No. 27 at 1). The undersigned will therefore now recommend that it be dismissed without prejudice.

### G. Statute of Limitations on Plaintiff's Cognizable but Misjoined Claims

In considering misjoined claims, the Ninth Circuit cautions the district courts to conduct a prejudice analysis before dismissing the severed parties pursuant to Federal Rule of Civil Procedure 21. *Rush v. Sport Chalet, Inc*., 779 F.3d 973, 975 (9th Cir. 2015) (abuse of discretion to dismiss rather than sever claims against improperly joined parties without evaluating the prejudice to the plaintiff of dismissal). The Ninth Circuit expressly noted that such consideration should include "loss of otherwise timely claims if new suits are blocked by statutes of limitations." *Rush*, 779 F.3d at 975 (citation omitted).

No statute of limitations is set out in 42 U.S.C § 1983. Instead, California's two-year statute of limitations on personal injury claims applies. Cal. Code Civ. Proc. § 335.1; *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004); *see also Canatella v. Van De Camp*, 486 F.3d 1128, 1132 (9th Cir. 2007); *Maldanado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004). Under federal law, civil rights claim like this accrues when plaintiff knows or has reason to know of the injury giving rise to the claim. *Olsen v. Idaho State Bd. of Med.,* 363 F.3d 916, 926 (9th Cir. 2004). *See* Cal. Civ. Proc. Code §§ 335.1, 352.1(a) (two-year statute of limitations for personal injury claims; two-year tolling period due to incarceration). The statute of limitations for bringing a claim under § 1983 in California is tolled during the time a prisoner pursues his administrative remedies and is potentially tolled up to an additional two years if plaintiff is incarcerated for a term of less than life. *See Moreno v. Thomas*, 490 F. Supp. 2d 1055, 1062 (C.D. Cal. 2007) (finding pro se prisoner's section 1983 complaint timely despite being filed nearly four years after claim arose); *Brown v. Valoff*, 422 F.3d 926, 943 (9th Cir. 2005) ("[T]he applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process."); Cal. Civ. Proc. Code §§ 335.1, 352.1(a). Under California's test for equitable tolling, a plaintiff must establish "timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff." *Butler v. Nat'l Cmty. Renaissance of California*, 766 F.3d 1191, 1204 (9th Cir. 2014) (explaining that federal courts borrow state law equitable tolling

17

provisions, unless they are inconsistent with federal law, and setting forth California's doctrine of equitable tolling).

A search on of the CDCR Inmate Locator website for Plaintiff's records, https://inmatelocator.cdcr.ca.gov/, indicates that Plaintiff was admitted in February 2014 and has a parole eligible date of January 2027. Therefore, the undersigned draws the reasonable inference that Plaintiff is incarcerated for a term of less than life, qualifying him for up to two years of tolling under Section 352.1(a), in addition to any period in which he was seeking administrative remedies. Because Plaintiff's earliest misjoined claim arose in late August 2019, the earliest time that his claim would be barred (not counting administrative tolling) would be August 2023, four months from this date of this order. While Plaintiff should act swiftly to refile a claim if he so chooses, the undersigned finds that he would not be prejudiced by dismissal of the misjoined claims, and that severance is not warranted. *See Rush*, 779 F.3d at 975.

Accordingly, it is **ORDERED**:

The Clerk of Court is directed to assign a district judge to this case.

Further, it is **RECOMMENDED**:

1. This action proceeds only on Plaintiff's Eighth Amendment excessive force claim against Defendants J. Navaro, I. Medina, O. Rodriguez, and A. Nunez, and his two Eighth Amendment deliberate medical indifference arising from the incident on May 14, 2019 and August 31, 2019 claims against Defendant C. Lewis.

2. All other claims and Defendants be dismissed from this action based on Plaintiff's misjoinder of claims and/or failure to state claims upon which relief may be granted.

////

////

NOTICE TO PARTIES

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these findings and recommendations, a party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's

Findings and Recommendations." Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated:    April 24, 2023

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE